# Court of Appeals
## Tenth Appellate District of Texas

10-23-00424-CR

Marcos Antonio Rios,
Appellant

v.

The State of Texas,
Appellee

On appeal from the
County Court at Law of Navarro County, Texas
Judge Amanda Doan Putman, presiding
Trial Court Cause No. C41459-CR

CHIEF JUSTICE JOHNSON delivered the opinion of the Court.

## MEMORANDUM OPINION

A jury found Appellant, Marcos Antonio Rios, guilty of the felony offense of aggravated robbery. The jury found the enhancement paragraphs to be true and assessed his punishment at fifty-five years confinement. The trial court sentenced Rios accordingly. This appeal ensued. We will affirm.

## A. Background Facts

On December 7, 2021, the Corsicana Police Department received a call about an armed robbery at a convenience store from the store's clerk, Rebecca Monjarez. When officers arrived, the suspect was no longer on the premises, but officers were able to review security camera footage. During the investigation, the Corsicana Police Department received information from Ennis Police Department that a similar armed robbery had occurred in Ennis a few hours before the Corsicana armed robbery. The suspect in the Ennis case used a similar white van and matched the physical description of the suspect in the Corsicana case.

After initially responding to the Corsicana robbery, Corsicana Police Officer James Johnson was rerouted to a nearby residential address due to a report of someone hitting the doors and windows of a house. Johnson did not locate anyone on the property, but he made contact with the caller, Angelita Aceves, and showed her a CCTV screenshot of the Corsicana robbery suspect. She recognized the suspect as her nephew, Marcos Rios. Officers were dispatched to the Aceves residence again later that day due to a report that Rios was in Aceves's backyard. Officer Heath Hayes responded and saw an individual who matched Rios's description. When Hayes tried to make contact,

the individual went into the residence. Hayes also entered the residence with permission from a resident and found Rios in the attic. Rios was arrested.

## B. Issue One

In his first issue, Rios argues that the trial court abused its discretion in admitting evidence of an extraneous act, specifically a robbery allegedly committed by Rios approximately one hour before this offense in a different county. Rios makes two arguments in this issue: (1) the extraneous bad act was not necessary to prove Rios's identity, and (2) the extraneous bad act should have been excluded under Rule of Evidence 403.

### 1. Standard of Review

A trial court's ruling on the admissibility of extraneous offenses is reviewed under an abuse-of-discretion standard. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). If the court's ruling is within the "zone of reasonable disagreement," it will be upheld. *Id*. Furthermore, if the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed even if the trial judge gave the wrong reason for his right ruling. *Id* at 344. A trial court's ruling to admit an extraneous offense is generally within the zone of reasonable disagreement if 1) the extraneous transaction is relevant to a material, non-propensity issue and 2) the probative

value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading of the jury. *Id.*

2. Relevance and Rule 404

To determine whether the trial court's ruling to admit the extraneous-offense testimony was within the zone of reasonable disagreement, we first determine whether the extraneous-offense evidence was relevant to a material, non-propensity issue. *See id.* Texas Rule of Evidence 404 states that evidence of a crime, wrong, or other act is not admissible to prove a person's character to show that on a particular occasion the person acted in accordance with that character. TEX. R. EVID. Rule 404. However, evidence of other crimes, wrongs, or acts may be admissible if it has relevance apart from its tendency to prove the character of a person in order to show that the person acted in accordance with that character. *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1990), on reh'g (June 19, 1991). This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident. TEX. R. EVID. Rule 404(b). These exceptions listed under Rule 404(b) are not exhaustive. *See De La Paz v. State*, 279 S.W.3d at 343. One well-established rationale for admitting evidence of uncharged misconduct is to rebut a defensive issue that negates one of the elements of the offense. *Id.*

Here, the predominant issue at trial was whether or not the gun used during the commission of the offense was a real gun or a BB gun. Throughout trial, Rios claimed that the gun was a BB gun, and therefore the State could not meet their burden of proof on the charged offense of aggravated robbery. Rios first put forth this argument in his opening statements and maintained his position through cross-examination of State's witnesses prior to the admission of evidence of the extraneous robbery. Since no gun was ever recovered by law enforcement, the State had to rely on other evidence to show the gun was real. The evidence related to the extraneous offense became the primary means of rebutting Rios's theory that the gun was just a BB gun. Detective Dan McAninch testified that based on his training and experience, Rios's actions on the video of the extraneous robbery were consistent with actions taken by someone handling a real firearm. There was also testimony that the gun seen in the video from the extraneous offense was the same as the gun used during the Corsicana robbery. Although it is not the reason discussed at trial for admitting the extraneous offense evidence, rebutting a defensive theory, specifically that the gun was not real, is a material, non-propensity issue. *See De La Paz v. State*, 279 S.W.3d at 344. Therefore, the extraneous offense evidence was relevant and admissible under Rule 404.

3. Rule 403

To determine whether the trial court's ruling to admit the extraneous-offense testimony was within the zone of reasonable disagreement, we consider whether the probative value of that evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading of the jury. *De La Paz*, 279 S.W.3d at 344. Texas Rule of Evidence 403 states that the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence. TEX. R. EVID. Rule 403. The rule envisions exclusion of evidence only when there is a "clear disparity between the degree of prejudice of the offered evidence and its probative value." *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009). The Court of Criminal Appeals applies the following Rule 403 balancing test to extraneous offenses:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006).

The first and second *Gigliobianco* factors help establish the probative value of the evidence by considering "(1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence." *See id* at 641. First, the "inherent probative force" refers to how strongly the evidence serves to make more or less probable the existence of a fact of consequence to the litigation. *See id.* As discussed above, the testimony and evidence from the extraneous robbery showed Rios using the gun in a way consistent with a real gun. The video from the extraneous offense and McAninch's testimony about Rios's behavior with the gun certainly support the State's contention that the gun was real and serve to make it more probably that the gun was real than if the extraneous offense evidence had not been admitted. Second, the proponent's need for the evidence must be taken into consideration. *See Gigliobianco*, 210 S.W.3d at 641. During the commission of the Corsicana robbery, Rios displayed the gun like he had during the extraneous robbery, but instead of cocking the gun back to get a bullet in the chamber, he struck Monjarez in the head with the gun. Without the video from the extraneous robbery, there was very little additional evidence, if any, to allow the State to rebut the defensive theory that the gun was a BB gun. Therefore, the probative value and the State's need for the evidence was high.

The remaining *Gigliobianco* factors address the dangers enumerated in Rule 403 which must substantially outweigh the probative value established by the first and second factors in order for the evidence to be excluded. *See Gigliobianco*, 210 S.W.3d at 641-42. In this case, the third, fourth, and fifth factors have some overlap. *Id* at 642. These factors address whether the evidence has any tendency to (3) suggest decision on an improper basis, (4) confuse or distract the jury from the main issues, or (5) be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence. *Id* at 641. The trial court could have reasonably concluded that the evidence would not confuse the jury or suggest a decision on an improper basis. While admission of an extraneous robbery in a trial of another robbery with similar circumstances could have a tendency to confuse or mislead the jury, in this case, most elements of the robbery were not highly contested. There was extensive evidence that Rios had committed the Corsicana robbery, including testimony that Rios had admitted to law enforcement that he committed the robbery. The only element that was highly contested was whether the gun was real, and the trial court could have found that evidence that Rios may have committed another robbery would not have unduly influenced the jury on that element. Additionally, while no limiting instructions were requested when the evidence was admitted, the trial court did provide limiting instructions in the

jury charge, providing the jury with the purpose and scope for which they could consider the evidence and counter-balancing to some extent the dangers of unfair prejudice, undue weight, or confusion of the issues. *See Blackwell v. State,* 193 S.W.3d 1, 17 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). We generally presume that a jury will follow the judge's instructions. *Gamboa v. State,* 296 S.W.3d 574, 580 (Tex. Crim. App. 2009). Finally, the sixth factor considers the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco,* 210 S.W.3d at 641-42. While it took some time to develop the proper foundations for the evidence of the extraneous robbery, we cannot say that the State spent an inordinate amount of time developing the evidence to rebut Rios's main defensive theory, and the evidence was not repetitive of other evidence.

Rule 403 "envisions exclusion of evidence only when there is a clear disparity between the degree of prejudice of the offered evidence and its probative value." *Hammer,* 296 S.W.3d at 568. We cannot say that there is a "clear disparity" between the danger of unfair prejudice posed by the extraneous-offense evidence and its probative value. Therefore, we cannot say the court abused its discretion by overruling Rios's Rule 403 objection.

Considering the foregoing evidence viewed in the light most favorable to the verdict, we conclude that the trial court did not abuse its discretion in admitting the extraneous offense testimony.

Accordingly, we overrule Rios's first issue.

## C. Issues Two and Three

In his second and third issues, Rios argues under two theories that the trial court erred in admitting his pre-Miranda conversation with Detective McAninch. In his second issue, Rios argues that the *Quarles* public safety exception to the *Miranda* doctrine should not apply to his statements. In his third issue, Rios argues that law enforcement made him a promise in order to obtain a confession from him, rendering his confession involuntary and therefore inadmissible.

After being arrested, but before any Miranda warnings, Rios requested to speak with an officer. Detective Dan McAninch spoke with him, and Rios requested that he be able to kiss his grandmother goodbye. McAninch asked Rios about the location of the gun used in the robbery. After Rios denied having a gun, McAninch responded with "No gun, no kiss." Rios then told McAninch that he had thrown the gun on the interstate near Palmer. The gun was never located.

Before trial, the trial court held a hearing on Rios's motion to suppress. Rios argued that his "interrogation" after arrest should be suppressed under multiple theories, including the Fifth Amendment and Chapter 38 of the Texas Code of Criminal Procedure. The trial court denied the motion to suppress.

At trial, the State offered a redacted copy of an officer's body camera video that did not include audio for the portion of the conversation between McAninch and Rios about the location of the gun. On cross-examination, Rios offered a video clip with audio which included the conversation between Rios and McAninch regarding the location of the gun. The law of invited error estops a party from making an appellate error of an action it induced. *See Prystash v. State*, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999); *Hartman v. State*, No. 09-24-00080-CR, 2025 WL 2658306, at *10 (Tex. App.—Beaumont Sept. 17, 2025, no pet.). Here, even if the trial court erred in denying the motion to suppress, Rios is responsible for the fact that the jury heard the conversation between Rios and McAninch and therefore is not entitled to reversal based on the admission of this evidence.

Accordingly, we overrule Rios's second and third issues.

## D. Conclusion

Having overruled Rios's three issues, we affirm the trial court's judgment.

MATT JOHNSON
Chief Justice

OPINION DELIVERED and FILED:  March 5, 2025

Before Chief Justice Johnson,
      Justice Smith, and
      Justice Harris
Affirmed
Do Not Publish
CRPM

